Court of Appeals for the Ninth Circuit will now draw near. Give your attention, you will be heard. God save these United States and this honorable court. Please be seated. Good morning. We have two cases on the calendar that are being submitted on the briefs. Those are 25-1689 Ravinder Kumar v. Pamela Bondi and 25-337 Justin Bliss v. Frank Bisignano. In accordance with the respective orders previously entered on the dockets of those two cases, those two cases are hereby submitted on the briefs. We'll now proceed to hear argument in the first case on calendar for argument this morning, which is 24-4000 Anthony Brown v. County of Lane. And we'll hear first from Mr. Berman. Can you please come up to the lectern? May it please the court and counsel, my name is Leonard Berman and I represent the plaintiff appellant Anthony Brown v. County of Lane, Dr. Velas and Agent Gent et al. In dismissing all of plaintiff's claims, the district court applied the wrong legal and factual standards. The court failed to recognize the declaration expert testimony of Dr. Mark Baskerville, who is also a J.D. and attorney, in creating a question of fact for a jury in dismissing Dr. Velas. Well, but what the district court said was that the doctor had not read the entire medical file and therefore was not qualified under the rules to offer an opinion. If someone who hasn't reviewed the entire medical file isn't in a position to opine, why was that ruling an abuse of discretion? Because, Your Honor, the factual data as to the condition and injuries and medical misconduct was a narrow slice of his file and Dr. Baskerville reviewed the file, reviewed the medical charts and the timeline and was able to give a medical opinion that was completely unrefuted by counsel, the court, or any medical doctor. He only reviewed a report about medications, prescription medications. Excuse me? Didn't he only review a report about prescription medications? He reviewed the report about prescription medications and he also reviewed emails and information regarding the injuries and the timeline and what happened to... Of course, that's not part of the medical record, the emails about the events. Right, I understand that. So from the medical record, the only thing he reviewed was a report about prescription medications. Prescription medications and I believe he also reviewed the medical incidents of the patient in the jail. May I continue? Yes. Furthermore, the court also failed to recognize the declaration testimony of Mr. Brown in disputing the location of his injuries and incident with Officer Gent and his falling in the day room. Also, his... Didn't the original complaint say that that alleged battery occurred in the medical, the med seg room? I believe so, yes. And then that was changed after the video came out and showed that that wasn't true and then he said it was in a place where the video didn't capture. Do I have that correct? That is correct, Your Honor. At any rate, there are questions about the treatment, there is testimony, and the actual reports from Officer Gent and his colleagues which indicated that he was non-responsive which ties into his medical claim of being wrongfully prescribed and that they used force on him and he put his knee on his back or neck or what have you. There was a question of fact whether the force used for a non-responsive patient or how should we say here, inmate, crossed the line into excessive force or Eighth Amendment cruel and unilateral punishment and that there is a dispute from what the plaintiff says and what defendants say and their own reports that create a genuine issue and a material fact that precludes summary judgment based on the factual record. A question about the Oregon battery claim. Is it your view that the standards for the tort of battery are exactly the same for a private citizen on the street as they are for a guard in a prison? Your Honor, we would argue that there is no, as far as I know, statutory or case law exception whereby you have to consent to battery if you're in custody that there's a difference. But battery is broadly defined as any kind of offensive touching and you're going to have to in the orderly administration of a prison sometimes, you know, have to move people along and touch them in ways that they may find to be offensive and is every single touching, you know, you're being slow going down the hallway and I give you a little push. Tort of battery, I go to a jury over that? Your Honor, respectfully, absolutely not. And we are not in any way alleging a benign touching down the hallway. We're talking about a non-responsive, medically sedated, wrongfully patient inmate who is a punching bag and who they acknowledge is non-responsive. What do you think is the line between the regular battery and the battery of the guard in the prison? What is the line? What's the extra ingredient you have to show in order, you know, to establish that a guard has engaged in a tort of battery? We believe, Your Honor, that it should be a factual determination based on the totality of the circumstances. Right, but what's the legal standard that you're trying to hit with the totality of the circumstances? Your Honor, we would argue that under the totality of the circumstances that excessive force, not necessary to move or deal with a non-responsive, medically sedated patient crosses the line beyond, to use your example, shoving an inmate down the hall and tell him to hurry up. Those are distinct differences in treatment of inmates and patients and people that are clearly non-responsive. Presumably, the inmate or civilian down the hall is not medically sedated and non-responsive or he wouldn't be walking down the hall. To get back to Judge Collins' question, are you placing a Fourth Amendment overlay on the standard? Yes. All right. And cruel and unusual, and it's also Eighth Amendment, it's a sentence, prison, it was sedated, non-responsive, and medically mistreated inmate to be subjected to this level of force and to suffer a dislocated shoulder, which he did not have treated inside or until he got out of prison. Let's assume for a moment that there was error in the district court. Why wasn't that harmless error? Why was it not harmless error to find the battery benign and de minimis versus egregious Fourth Amendment or Eighth Amendment violations? But the district court's ruling was that you hadn't proved anything about intent. That was the ruling. And suppose we were to find, just hypothetically, that there was a triable issue as to intent, then would it be alternatively harmless error because if the force was ultimately not excessive, even if there was intent to use that force? In other words, it would end up tying up with the Fourth Amendment claim. So even if you're right on the intent, it stands or falls with the Fourth Amendment claim on the excessiveness issue. That's my question. Yes. It would be Fourth Amendment excessive issue, and on cruel and unusual punishment, it would be an issue of what kind of force should a patient, an inmate, non-responsive receive. And we would also argue that there is such a thing as negligent battery, and you can hit somebody and be responsible for it, mistaking them for somebody else or, you know, what have you in the sense. But furthermore, there is intent here. The implication is if he was not violent, if there is nothing in the record, it should go, Your Honor, to take judicial notice that if a medically sedated, non-responsive, documented inmate is not cooperating, and it's obvious to the officers that it is medically and pharmaceutically related that any injury or use of force is by definition excessive and a cruel and unusual punishment because he's essentially a punch-and-judy punching bag, and he's not posing a threat to himself or anybody else by being completely non-responsive and drugged out of his mind and never having taken these medications before. Do you want to save any time for rebuttal? Excuse me? Do you want to save any time for rebuttal?  Yes. Okay. All right. Thank you, Your Honor.  Thank you. So we'll hear first from Mr. Vahar. Yes, sir. Did I pronounce that correctly? Vahar. Vahar. Yes, sir. Okay. Good morning. My name is Marcus Vahar, and I represent Lane County, Oregon. I would like to reserve five minutes for my time, and I appreciate that time being so  I do believe that what the District Court did in its ruling on both battery and on the intentional infliction of emotional distress were both appropriate rulings. I will note that within the briefing... Well, now, from what I could tell from both the briefing below and the briefing in this court, you basically applied the same battery standards that would apply to somebody on the street. And certainly, if somebody on the street takes someone and slams them on the ground and dislocates their shoulder and grinds their knee into the back, that's a battery. I mean, it's just not even contestable. So that's what I'm kind of flummoxed, because you seem to concede the legal standard was that it's the same as anyone on the street, but you definitely lose under that standard. So I'm very confused. And so, Your Honor, I did want to address the panel's questions regarding the Fourth Amendment and how that would apply to battery. I do believe in the case of Geigler v. City of Klamath Falls, which is 21 ORAP 753, page 763. It goes over the standards for law enforcement when they're involved in these kinds of situations, and it does actually discuss the excessive standard application and how that would be applicable to these kinds of individuals. Counsel, I have two questions here. First of all, the case that you just cited to us and other cases that I've read that talk about a Fourth Amendment analysis are pre-conviction. So that would make sense that the Fourth Amendment is applicable. We're not in that context here. So why are we even talking about the Fourth Amendment at all? Wouldn't we be under the Eighth Amendment, if anything? I do believe that the Eighth Amendment claims that have been made as well, too, were appropriately raised by... That's not my question. My question is, why are we talking about the Fourth Amendment? Why do you think it applies at all? Because I do believe that when you're in custodial settings, you do need to look at the actual conduct from law enforcement officers and for custodial agents. Do you have any case that talks about applying the Fourth Amendment in a prison context where somebody has already been convicted? No. I should not say I have a case that directly applies the Fourth Amendment. The case I did cite discusses, again, excessive force in those contexts when they're involving, and I will agree, that was a non-custodial setting and that was pre-arrest as well. Okay, I have another question. Shifting gears slightly, and that is, I don't see anywhere in your briefs that you argue this issue. So I'm wondering if it's preserved? That would be correct, Your Honor. I have not raised this issue outside of response to what Mr. Berman is saying here, that that standard may apply. So just an oral argument, not in your briefs? Yes, that is correct. And I will note that when it comes to the briefing, I do think that the panel is correct in terms of the discussion around intent as well. I do believe that one of our key arguments that we've raised and that the District Court was that intent was not actually argued by Mr. Berman. It's not necessarily that there was... But the District Court found a triable issue as to intent. So if someone on the street comes up to you and takes you and slams you on the ground and grinds their knee in your back, there's a triable issue of whether or not there was an intent to cause offensive contact? In that situation, yes. However, I would not agree in this situation that we have with Mr. Brown, given that he was in a custodial setting, and that both sides agree that this was in the performance of a medical transport. So the custodial setting affects the offensive contact part of the case? I'm just not seeing how it fits in. No, so I would argue it's not necessarily the fact that they're in a custodial setting that then invalidates the intent. It's more so that what the custodial setting and the facts of the matter around Deputy Gens providing medical transport was that that was Mr. Gens' intent, or Deputy Gens' intent at the time, was to transport and to provide that transport. Our argument is that plaintiff at no point in time during any of the briefings or argument actually discussed Deputy Gens' intent. It wasn't necessarily that there was conclusory arguments made that he had harmful... But the, I mean, the action itself gives rise to an inference of intent. So it's hard to say, as the District Court said, that there isn't a triable issue of intent if the acts are what happened. And I would say that while I would agree that if there can be a discussion around intent, I would argue that because plaintiff did not raise it and there were no arguments. And I would also argue that the District Court did find that there was no actually finding of intent or there was no actual discussion of intent from plaintiff's counsel. And they also discussed the actual offensive contact, which as Your Honor had mentioned, there is a dispute as to where it happened and the exact degree of what had happened, which was also discussed at the District Court level as well. But I would argue that, again, the issue of intent, which was never actually raised by plaintiff, means that this is ripe for summary judgment. It's not necessarily that he argued correctly intent or that there's a conclusory statement. It's that there was no intent argued. And for that reason, intent should not be presumed. It should have to be argued and then the fact should support it. And that's not what happened here. And so for that reason, I would argue that that is conclusory both for battery and for intentional infliction of emotional distress, which plaintiff had also accounted for in their brief. And I see that I'm out of time. All right. Thank you. Thank you, Counsel. So we'll hear now from Mr. Ballard. Good morning, Your Honors. May it please the Court, Jonathan Ballard on behalf of Appellee Dr. Alfredo Velez. I present today to request that this Court affirm the trial court's orders granting dismissal of the medical malpractice claim against Dr. Velez. As we heard today, the thrust of appellant's argument asserts that his expert declaration prepared by Dr. Baskerville created a sufficient genuine issue of material fact to defeat summary judgment on his state tort medical malpractice claim. If we hold that the exclusion of Dr. Baskerville was not an abuse of discretion, does that end the case against your client? I know. I think the correct standard on review is de novo. Here, the trial court correctly concluded that Dr. Baskerville's declaration was defective for several reasons. First, the opinions lacked any factual basis and were wholly unreliable where the expert only reviewed a partial medical log and didn't even review the complete medical record. This means that the expert opinions were developed without any understanding of the underlying clinical evaluations that were completed by Dr. Velez with appellant at the jail. And it's exactly why Dr. Baskerville was unable to opine on exactly which medications were wrong, why the dosing was inappropriate, and he couldn't even state what the dosing should have been. Is it your position that on the question of whether or not the Dr. Baskerville was qualified as an expert under 702 such that his testimony could be considered for purposes of summary judgment that we review that determination de novo? Yes, this court can affirm for any reason on its own, and that's exactly right. No, we review whether or not the evidence creates a triable issue. We review that de novo. But the predicate issue, whether or not this item of evidence clears 702 and goes into the balance for summary judgment, which we review de novo. Do we review that de novo, or do we review that for abuse of discretion? I believe that, like you said, this court can affirm for any reason. It reviews all the evidence independent de novo. There is an abuse of discretion component, certainly. Getting back to Dr. Baskerville's opinions within his declaration, counsel cited to the fact that he reviewed the medical chart and timelines according to the fact that these may have been included in emails. The emails were never disclosed together with his expert declaration. There's quoting in his declaration from the emails, but that doesn't substantiate any of his reliability or show that he had any factual basis to offer the opinions that he did. And this is important, too, because going to causation, Dr. Baskerville failed to provide any opinions to connect the alleged standard of care violation with the appellant's harm that was alleged of prescription poisoning. Instead, he only offers the medication side effects, but he doesn't state exactly what medication actually caused any harm to appellant. I think what is also important on scrutiny, the medical record itself shows that there's no evidence that Dr. Velez violated the standard of care. In reviewing the medical record, it actually shows that he appropriately evaluated appellant on multiple occasions for his mental health conditions and prescribed medications to treat those conditions. Your Honor, even putting the expert declaration issue aside, there's a larger issue that's looming, too, which was pointed out in our brief, in that there's an independent basis to affirm, notwithstanding the expert declaration. Appellant failed to respond to requests for admissions in this case, thereby admitting that there was no negligence, causation, or harm. The district court did not rely on that ground. Am I correct? That is correct, Your Honor. My point being is that for this reason alone, the summary judgment can be affirmed as a matter of law. It's unclear from the briefing of appellant if the constitutional claims are at issue that were dismissed on 12b-6. I see that I'm out of time. I'll just assert that the order dismissing the constitutional claims on 12b-6 should also be affirmed. All right. Thank you, counsel. We'll hear rebuttal now. Thank you, Your Honor. I want to state that the court cites that there was no medical evidence in the record. However, the declaration of Dr. Mark Baskerville stated on ER-40, to a reasonable degree of medical probability, one, prescribing the wrong medication to Mr. Brown clearly fell below the community standard of care, and two, if Dr. Baskerville has intended to prescribe those medications, divalprox, doxepine, escitalopram, trazodone, at those doses without a surveillance system, to promptly recognize foreseeable adverse effects. I want to ask you a follow-up question to a question that Judge Forrest asked, which is, you know, in the conversation I had with you before about the battery claim and the overlay, you were talking in terms of excessive force. But Judge Forrest pointed out that this is an Eighth Amendment case and not a Fourth Amendment case because he's a convicted inmate. So would that mean that when you were referring to excessive force, the overlay would really be an Eighth Amendment overlay, or are you saying it's still a Fourth Amendment overlay on the state law claim? It would be both, Your Honor. I believe there's case law suggesting that there is comity and some parallel issues between Fourth and Eighth Amendment claims in prison and that he would qualify under those circumstances, Your Honor. Okay. All right. Thank you, counsel. Thank you, Your Honor.
judges: COLLINS, FORREST, Fitzwater